ELECTRONICALLY FILED - 2020 Feb 14 9:59 AM - WILLIAMSBURG - COMMON PLEAS - CASE#2020CP4500078

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF WILLIAMSBURG<br><br>Stephen Sweikata,<br><br>           Plaintiff,<br><br>v.<br><br>Town of Kingstree,<br><br>           Defendant. | IN THE COURT OF COMMON PLEAS<br>THIRD JUDICIAL CIRCUIT<br><br><br>**SUMMONS** |

TO THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty-five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

**CROMER BABB PORTER & HICKS, LLC**

BY:   *s/Samantha E. Albrecht*
       Samantha E. Albrecht (#102642)
       1418 Laurel Street, Suite A
       Post Office Box 11675
       Columbia, South Carolina 29211
       P: 803-799-9530 | F: 803-799-9533
       samantha@cbphlaw.com

*Attorney for Plaintiff*

February 14, 2020
Columbia, South Carolina

ELECTRONICALLY FILED - 2020 Feb 14 9:59 AM - WILLIAMSBURG - COMMON PLEAS - CASE#2020CP4500078

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF WILLIAMSBURG<br><br>Stephen Sweikata,<br><br>      Plaintiff,<br><br>v.<br><br>Town of Kingstree,<br><br>      Defendant. | IN THE COURT OF COMMON PLEAS<br>THIRD JUDICIAL CIRCUIT<br><br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

The Plaintiff, complaining of the Defendant, respectfully shows to the Court:

**PARTIES AND JURISDICTION**

1. Plaintiff, Stephen Sweikata, is a citizen and resident of Dorchester County, South Carolina. At all times relevant herein, Plaintiff was employed with the Kingstree Police Department located in Kingstree, South Carolina.

2. Defendant, Town of Kingstree is a municipal subdivision of the State of South Carolina located in Williamsburg County, South Carolina. In pertinent part, the Town of Kingstree operates the Kingstree Police Department. The Kingstree Police Department is a law-enforcement agency.

3. This action arises under Title VII of the Civil Rights Act of 1964, *2000e et seq*, the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*), the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*), and the common law of South Carolina.

4. Defendant Department employs a sufficient number of employees to be subject to legal action under the ADEA.

1

5. Plaintiff filed charges of discrimination with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission, received his right to sue letter, and this action is timely.

6. Jurisdiction and venue are proper, because the parties have sufficient connections to this circuit, and the events giving rise to this action occurred in Williamsburg County, South Carolina.

## FACTUAL ALLEGATIONS

7. Defendant hired Plaintiff in or around April 2017. At the time he was hired and throughout his employment with the Department, Plaintiff was one of very few white men working within the Kingstree Police Department. Plaintiff was also the oldest police officer during his tenure with the Department.

8. Plaintiff performed his job in a competent, if not more than competent manner, during his employment with the Department.

9. On or about October 11, 2017, Plaintiff wrote a memorandum to former Lieutenant Scott, a black male, concerning officer safety violations that put him in danger by Sergeant Staggers, a black male.

10. On or about November 20, 2017, Plaintiff used a taser on a suspect, a black male, following a mile-long pursuit reaching seventy miles per hour and disregarding a red light. The suspect had exited the vehicle and disregarded police commands. Plaintiff used the taser on the subject for five seconds based on a direct order from Lieutenant Scott

11. A SLED investigation was done at the request of former Police Chief Barr, a black male, and Plaintiff was cleared of the incident.

ELECTRONICALLY FILED - 2020 Feb 14 9:59 AM - WILLIAMSBURG - COMMON PLEAS - CASE#2020CP4500078

ELECTRONICALLY FILED - 2020 Feb 14 9:59 AM - WILLIAMSBURG - COMMON PLEAS - CASE#2020CP4500078

12.     In or around March 2018, Plaintiff attended a meeting with then Acting Chief Scott and Town Manager Treme. Plaintiff was told the violations he reported in 2017 were investigated, and he was exaggerating the situation.

13.     Former Chief Barr recommended disciplinary actions against Sergeant Staggers, but Chief Barr was removed from his position before action was taken.

14.     Sergeant Staggers, a black male, was promoted to Acting Patrol Supervisor when Chief Bar was removed.

15.     In or around March 2018, Plaintiff advised Officer Lucas, a black male, who was new to the department, to move his vehicle from the front of the department. Following Plaintiff's advisement to Officer Lucas, Plaintiff walked out towards his vehicle. Office Lucas indoors said "f**k Sweikata" with witnesses in the office. He came outside to engage in an altercation with Plaintiff using profanity and aggression.

16.     Plaintiff was written up for the incident when he was not the aggressor. Office Lucas was not disciplined in any way for the incident.

17.     This write up was titled as Plaintiff's last and final and second write up. Plaintiff had never received a previous write up or disciplinary actions from the Department.

18.     In or around August 2018, Plaintiff responded to a call at Kingstree High School. Upon arrival, the principal was aggressive and demanded Plaintiff file criminal charges. Plaintiff informed the principal that he was required to investigate the situation before action could be taken. The principal responded by asking "are you going to do a report or not?" Plaintiff ensured his body camera was recording during this situation.

19. Officer Kirby arrived outside the high school. Plaintiff informed him of the situation and recommended he ensure his body camera was on. During this time with Officer Kirby, the principal called Chief Williams and claimed Plaintiff was acting unprofessional.

20. Two days following the call to Kingstree High School, Plaintiff was written up for a final warning; there was no investigation. Lieutenant Scott told Plaintiff he was going to watch the body camera footage and get back to him. Later, he informed Plaintiff that he had nothing to worry about.

21. A meeting was scheduled regarding the call to Kingstree High School. Plaintiff was not allowed to respond. At the end of the meeting, Plaintiff requested that the body camera footage of himself and Officer Kirby be reviewed. Town Clerk, Lowery, a black male, stated there was no body camera footage from the incident. Plaintiff was informed that the body camera was not recording during the incident even though he had confirmed the camera was on during the situation with the principal.

22. Officer Kirby was not interviewed regarding the incident with the principal.

23. After the incident at Kingstree High School, Plaintiff wrote a memo to Chief Williams. In this memo, Plaintiff explained to Chief Williams that he felt that he wasn't being treated fairly, and Plaintiff felt as though he was being targeted by the Department. After Chief Williams received Plaintiff's memo, he called Plaintiff at home to yell at him and told Plaintiff his memo had no substance.

24. A meeting was held to review Plaintiff's memo a few days later with Chief Williams and Lowery. In this meeting, Plaintiff expressed that internal affairs rules weren't being followed with regard to the disciplinary action that had been taken against him. Chief Williams

stated that he did not have to follow the internal affairs rules because he did not have the staff to do so.

25.  In November 2018, Plaintiff went to see Treme. He reported his concerns that Chief Williams and Lowery were targeting him. Treme stated he would investigate the situation and get back to Plaintiff. To date, Treme has not gotten back to Plaintiff and his concerns were never addressed.

26.  On March 3, 2019, Plaintiff was working a twelve-hour shift which was scheduled to end at 6:00 AM on March 4, 2019. The morning of March 4, 2019, Plaintiff left work early, at 12:41 AM, due to a knee injury.

27.  At 4:48 PM, the same day, an email was sent to Plaintiff's work email which stated he was to attend a training on March 6, 2019 at 9:00 AM. Plaintiff was not scheduled to work on March 5, 2019, and Plaintiff was not scheduled to work on March 6, 2019 until 6:00 PM.

28.  Plaintiff does not check his work email when he is off duty. Previously, if the department needed something from him on short notice, they would call Plaintiff's personal phone or send a text message to his personal phone.

29.  On March 6, 2019, Corporal Arroyo, a white male, called Plaintiff at 8:48 AM and at 9:00 AM. Plaintiff missed both calls as he was asleep because he had worked the night shift for the Department. At 9:01 AM, Plaintiff called Corporal Arroyo back. Plaintiff asked what training Corporal Arroyo was talking about and when he would have been notified about the training. Plaintiff also stated that he would come to the Department immediately to participate in the training. Corporal Arroyo told him that he did not need to come in, and Plaintiff could make up that training the following day when the Department already had a different training scheduled. Plaintiff ended up calling in sick from his shift the evening of March 6, 2019.

ELECTRONICALLY FILED - 2020 Feb 14 9:59 AM - WILLIAMSBURG - COMMON PLEAS - CASE#2020CP4500078

30. On March 7, 2019, Plaintiff received a call from Chief Williams to come in and meet with him at 3 PM the same day. Plaintiff was brought into a meeting with Chief William, Lowery, Lieutenant Williams, a black female, and Lieutenant Brockenberry, a black female. Plaintiff was asked to disarm and hand in his gun. Plaintiff was then terminated based on missing the March 6th training.

## FOR A FIRST CAUSE OF ACTION
### (Race Discrimination in Violation of Title VII)

31. Plaintiff realleges the foregoing where not inconsistent herewith.

32. Plaintiff is a white male.

33. Plaintiff met the legitimate expectations of his job as evidenced by his prior performance record and lack of disciplinary actions.

34. Plaintiff was denied fair terms and conditions of employment by Defendant and was treated disparately in comparison to similarly situated black employees. Specifically, Defendant treated Plaintiff in an unfair and hostile manner in comparison to black employees, failed to address Plaintiff's reports of mismanagement and safety concerns within his department and his reports of unfair treatment from his supervisors, allowed Plaintiff's supervisors to interfere with Plaintiff's job duties, and ultimately terminated Plaintiff for missing a training he was not made aware of.

35. Defendant's reason for Plaintiff's termination is false and pretextual.

36. Such treatment, described herein, constitutes unlawful discrimination in violation of Title VII, for which Defendant is liable.

37. As a direct and proximate result of the race discrimination alleged herein, Plaintiff suffered from a hostile work environment and was terminated from his position. Plaintiff is entitled to all damages caused thereby, including the loss of his employment, back pay, front pay, loss of

earning capacity, lost benefits; as well as emotional distress, loss of reputation, humiliation, embarrassment, and mental anguish. The Plaintiff is also entitled to the attorneys' fees and costs of this action.

## FOR A SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

38. Plaintiff realleges the foregoing where not inconsistent herewith.

39. Plaintiff engaged in a protected activity when he complained to Defendant about what he viewed as unfair treatment based on his race.

40. Plaintiff was pretextually terminated because he engaged in such protected activity, in violation of Title VII.

41. Defendant is liable to Plaintiff for its willful and wrongful retaliation against Plaintiff for protected activities he took against unfair, egregious, and perceived race discrimination.

42. As a direct and proximate result of the race discrimination alleged herein, Plaintiff suffered from a hostile work environment and was terminated from his position. Plaintiff is entitled to all damages caused thereby, including the loss of his employment, back pay, front pay, loss of earning capacity, lost benefits; as well as emotional distress, loss of reputation, humiliation, embarrassment, and mental anguish. The Plaintiff is also entitled to the attorneys' fees and costs of this action.

## FOR A THIRD CAUSE OF ACTION
### (Age Discrimination)

43. Plaintiff realleges the foregoing where not inconsistent herewith.

44. Plaintiff is over 40 and is in a protected class with respect to his age.

45. Plaintiff met the legitimate expectations of his job as evidenced by his prior performance record and lack of disciplinary actions.

46. Plaintiff had informed the Defendant that he felt he was being mistreated and singled out by leadership in the Defendant Department, and he did not receive a positive response

47. Plaintiff was terminated on the asserted basis that he missed a training exercise that he had been told he could make up the next day due to the Defendant having another training already scheduled.

48. Plaintiff was replaced by younger, less qualified employees.

49. Plaintiff was terminated because of his age.

50. Defendant Kingstree Police Department is liable to the Plaintiff for age discrimination and the damages directly and proximately caused thereby, which include: back pay, front pay, back benefits, front benefits, diminished earning capacity, pain and suffering, stress and anxiety, and the reasonable attorney's fees and costs of this action. He is also entitled to injunctive relief to include reinstatement.

51. Furthermore, the age discrimination described herein was willful and wanton, and Plaintiff is entitled to liquidated damages for the same.

### FOR A FOURTH CAUSE OF ACTION
### (Violation of the Fair Labor Standards Act- Failure to Pay Overtime Wages, 29 U.S.C. § 201 *et seq.*)

52. Plaintiff realleges the foregoing where not inconsistent herewith.

53. The Defendant Department is an "employer" for purposes of the Fair Labor Standards Act (FLSA), 29 U.S.C. §201 *et seq.* (2008), and amendments thereto.

54. Plaintiff was an employee of the Defendant Department for the purposes of the FLSA during all times relevant to this Complaint.

55. The Defendant Department expected Plaintiff to check his email and personal phone for work related duties.

56. Defendant Department terminated Plaintiff after he failed to maintain constant contact with his phone and email.

57. Plaintiff was expected to look at both his phone and email at all hours of the day to make sure that he was not needed. When Plaintiff did not see an email come informing him of a training exercise for March 6th, Plaintiff was woken up that morning by multiple phone calls from Corporal Arroyo asking where he was. Plaintiff had worked the night shift the night before and had not seen that email sent to him.

58. Due to Plaintiff not checking his email and phone constantly for the information on the training, Defendant department terminated his employment the next day due to his missing the training that he was not informed of until his off-duty hours.

59. Such actions by the Defendant Department, performed willfully, intentionally, knowingly, and in bad faith, are in violation of the FLSA.

60. Plaintiff is entitled to lost wages, compensatory damages, liquidated damages, front pay, attorney's fees and costs, and any other legal or equitable remedies available under the FLSA.

**FOR A FIFTH CAUSE OF ACTION**
**(Promissory Estoppel)**

61. Plaintiff realleges the foregoing where not inconsistent herewith.

62. Defendant made an unambiguous promise to Plaintiff that he would be able to make up the March 6, 2019 training.

63. This promise was made by a Defendant employee, Corporal Arroyo, who had the power to bind the Defendant.

64. Plaintiff reasonably relied upon the promise of Defendant. Such reliance is expected and foreseeable by Defendant.

65. Plaintiff's reliance on these promises was to his detriment.

66. As a direct and proximate result of the reliance on these promises, the Plaintiff has been deprived of his full salary, back pay, future damages, and any other economic or equitable remedies available. Plaintiff also seeks reasonable attorney's fees and the costs of this action and any prejudgment interest allowed under the law.

## FOR A SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)

67. Plaintiff realleges the foregoing where not inconsistent herewith.

68. Defendant owed Plaintiff a legal duty to act with due care in supervising Plaintiff's colleagues. That duty arose out of Plaintiff's protected property interests in his employment with the Department.

69. Defendant was grossly negligent in supervising Chief Williams and other management within the police department after Plaintiff made numerous reports of unfair treatment and mismanagement.

70. Defendant had reason to know management within the police department required excessive supervision given the past conduct which had been reported by Plaintiff.

71. Defendant's negligence was reckless, willful, and wanton amounting to gross negligence and the failure to act with even the slightest care.

72. Plaintiff suffered the dignitary and pecuniary damages detailed below as a direct and proximate result of the Defendant's gross negligence.

73. Those damages include dignitary losses such as: reputational loss, loss of goodwill, pain and suffering, shock, humiliation and economic losses such as: back pay, front pay, back

ELECTRONICALLY FILED - 2020 Feb 14 9:59 AM - WILLIAMSBURG - COMMON PLEAS - CASE#2020CP4500078

benefits, front benefits, loss of earning capacity. The Plaintiff is further entitled to an award of attorney's fees and costs under South Carolina Law, and pre and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant for lost wages and for reinstatement to his former position. Plaintiff is entitled to any equitable or compensatory damages for the retaliation alleged in this action. Plaintiff is entitled to liquidated damages and damages associated with the loss of his job, loss of earning capacity, loss of retirement and other benefits, and mental and emotional distress. Plaintiff last prays for any such other relief as the Court may deem just and proper, and pre-judgment interest on all damages.

**CROMER BABB PORTER & HICKS, LLC**

BY:  s/ Samantha Albrecht
  Samantha Albrecht (#102642)
  1418 Laurel Street, Suite A (29201)
  Post Office Box 11675
  Columbia, South Carolina 29211
  Phone 803-799-9530
  samantha@cbphlaw.com
  *Attorney for Plaintiff*

February 14, 2020
Columbia, South Carolina

ELECTRONICALLY FILED - 2020 Feb 14 9:59 AM - WILLIAMSBURG - COMMON PLEAS - CASE#2020CP4500078