IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Stephen Sweikata,<br><br>            Plaintiff,<br><br>v.<br><br>Town of Kingstree,<br><br>           Defendant. | C/A No. 4:20-cv-1100-SAL<br><br><br><br>**OPINION AND ORDER** |

This matter is before the court for review of the January 5, 2022 Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, III (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). [ECF No. 36.] In the Report, the Magistrate Judge recommends that the court grant Defendant's motion for summary judgment as to Plaintiff's federal claims and decline to exercise jurisdiction over Plaintiff's state law claims. *Id.* at 24. For the reasons set forth below, the court adopts the Report in its entirety.

**BACKGROUND**

Plaintiff brings this action against his former employer, Defendant Town of Kingstree, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e) *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiff also asserts state law claims for promissory estoppel and negligent misrepresentation.

On February 14, 2020, Plaintiff filed this action in the Williamsburg County Court of Common Pleas, and Defendant removed it to this court on March 17, 2020. [ECF No. 1.] On March 23, 2021, Defendant moved for summary judgment on Plaintiff's federal claims ("the Motion"). [ECF

1

No. 22.] Thereafter, Plaintiff submitted his response in opposition, ECF No. 23, and Defendant submitted its reply, ECF No. 24. On November 23, 2021, with the permission of the court, Plaintiff filed supplemental briefing to its response in opposition. *See* [ECF Nos. 33, 34.] On January 5, 2022, the Magistrate Judge issued the Report that is the subject of this order. [ECF No. 27.] Plaintiff filed objections to the Report on January 5, 2022. [ECF No. 37.] Defendant did not file a reply, and the time to do so has expired. Thus, this matter is ripe for the court's review.

## STANDARDS OF REVIEW

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270¬71 (1976). The court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). In the absence of objections, the court is not required to provide an explanation for adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

Further, summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine dispute

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323.

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

## DISCUSSION

Plaintiff asserts that the Report erred by (1) ignoring evidence of discriminatory pretext in Defendant's issuance of a written reprimand to him; (2) ignoring evidence of discriminatory and retaliatory pretext in his termination and (3) failing to address evidence demonstrating that Plaintiff's work while off duty was compensable. *See* [ECF No. 37.] For the reasons stated herein, Plaintiff's objections are overruled.

### I. Written Reprimand

Plaintiff's first objection surrounds an argument with a younger, black officer, Kadeem Lucas

3

("Lucas"), resulting in a written reprimand for the Plaintiff only. [ECF No. 37 at 3–4.] The Report opined that summary judgment was appropriate because, even if Plaintiff met his burden of establishing a *prima facie* case of discrimination—which requires a finding that the adverse employment action occurred under circumstances giving rise to an inference of discrimination—he failed to demonstrate that Defendant's proffered reasons for writing up Plaintiff only were pretextual. *See* [ECF No. 36 at 14.] Plaintiff alleges that the Report ignored comparator evidence and evidence that Defendant failed to investigate the charges alleged in the reprimand, which support a finding of pretext.

Plaintiff's objection concerning comparator evidence asserts the same argument considered by the Report—that there is evidence of pretext because Plaintiff and Lucas both used profanities and were under the same police chief, but only Plaintiff was issued a Corrective Action Form. *See* [ECF No. 36 at 12–13, ECF No. 37 at 4.] Plaintiff's argument, however, ignores Defendant's proffered non-discriminatory reason for the disparate treatment. As explained in the Report, acting-chief Carl Scott ("Scott") investigated the incident—which involved talking with Lucas and Scott (individually and together) and obtaining a statement from a witness—and based on his findings, he determined that a written reprimand was appropriate for Plaintiff only. [ECF No. 36 at 14.] The witness statement explained that when Lucas left to move his vehicle, Plaintiff waited outside to continue the argument. *See* [ECF No. 23-6.] Plaintiff's disagreement with the decision to issue Plaintiff a written reprimand fails to demonstrate that it was pretext for discrimination based on race or age. *See Evans v. Technologies Applications & Svc. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."). Plaintiff's objection, is therefore, overruled.

Next, Plaintiff argues that Defendant's "failure to fairly and properly investigate the charges it

made against Plaintiff is indicative of pretext." [ECF No. 37 at 6.] Specifically, Plaintiff points to the testimony of Richard Treme ("Treme"), Kingstree Town Manager, who indicated he signed off on the Corrective Action Form written by Scott without personally investigating the allegations contained within it. [ECF No. 37 at 5–6.] Again, none of Plaintiff's proffered evidence demonstrates that Scott's investigation into the incident was pretextual. Moreover, Plaintiff "is not entitled to an even, fair, or just investigation. Pretext analysis does not convert Title VII into a vehicle for challenging unfair—but nondiscriminatory—employment decisions." *Bennett v. New Foundations Child. & Fam. Servs., Inc.*, 2010 WL 517900, at *8 (D.S.C. Feb. 10, 2010); *see also Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Even if these investigations were improper or substandard, that does little to help her establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination."); *Cunningham v. TWC Admin. LLC*, No. 3:16-cv-3904, 2018 WL 7204078, at *13 (D.S.C. Nov. 29, 2018), *report and recommendation adopted*, 2019 WL 311825 (D.S.C. Jan. 24, 2019) ("At bottom, even 'conduct[ing] a poor investigation' and making a 'poor decision' would not establish pretext.'"). Assuming arguendo that Defendant's investigation into the incident was improper or incomplete, Plaintiff nevertheless fails to establish that such an investigation sufficiently evidences pretext for age or race discrimination. *See* [ECF No. 37 at 4–5]. Accordingly, Plaintiff's objection is overruled.

**II. Termination**

Plaintiff's next objection surrounds his termination of employment on March 7, 2019. Plaintiff argues that the Report ignored evidence that Defendant's proffered reasons for his termination were pretext for discrimination and retaliation. *See* [ECF No. 37 at 6.]

**A. Discrimination**

The court turns first to the section of the Report addressing Plaintiff's claim for discriminatory termination.  The Report opined that summary judgment was appropriate because, even if Plaintiff met his burden of establishing a *prima facie* case of discrimination, he failed to demonstrate that Defendant's proffered reason for terminating Plaintiff was pretext for discrimination.  *See* [ECF No. 36 at 16–18.]

Plaintiff argues that the Defendant's proffered reasons for terminating him are contradicted by the testimony of Treme and Chief Andre Williams ("Chief Williams") and Defendant's motion for summary judgment.  [ECF No. 37 at 7.]  Defendant proffered in its motion for summary judgment that Treme fired Plaintiff "[b]ased on his history of issues, on the Chief's recommendation," ECF No. 22 at 4, which is consistent with Treme's testimony that he terminated Plaintiff because of written reprimands and issues Chief Williams was having with Plaintiff, *see* ECF No. 36 at 16; Treme Dep. 13:16-20, 43:19-24.  Plaintiff may disagree with the allegations contained within the written reprimands, but the record reflects that he received several written reprimands "for arguing with a coworker, discussing internal information outside of the police department with individuals outside the department, arguing with and disrespecting a member of the public who requested assistance, failing to activate his body camera," and missing a training.  [ECF No. 36 at 17]; *see* [ECF No. 22-4; 22-5; 22-6; 23-10; 23-19.]  Plaintiff does not specifically identify any "shifting and contradicting reasons" indicating pretext, and the court finds none.  His objection is thus overruled.

Next, Plaintiff reasserts his argument that Defendant's proffered reason for terminating him is "weak, incoherent, and not worthy of credence" and based on improper investigation.  [ECF No. 37 at 7.]  The Report correctly rejected this argument, noting that "[it] is not the province of this Court to decide whether an employer's decision to terminate a plaintiff's employment was 'wise,

6

fair or correct' as long as it was not based on a protected trait." [ECF No. 36 at 17 (quoting *Dejarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998))]; *see also Anderson*, 406 F.3d at 272 ("[Courts] do not sit as a 'super-personnel department weighing the prudence of employment decisions' made by the defendants."). Again, Plaintiff's issue is with the allegations contained in the written reprimands. His disagreement, however, fails to demonstrate that Treme's reliance upon the written reprimands when he terminated Plaintiff was dishonest and a pretext for discrimination based on age or race. *See Evans*, 80 F.3d at 960–61 (4th Cir.1996) ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff."); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (finding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence failed to address their honest belief that threats were made). Nor has Plaintiff provided evidence upon which a factfinder could conclude that the allegedly false statements contained in the reprimands, written by whomever was acting chief at the time, were written as pretext for discrimination. In short, Plaintiff fails to point to evidence establishing a genuine issue of material fact as to whether racial or age discrimination was the real reason for his termination, and his objection is overruled.

Plaintiff next shifts to arguing that he was terminated solely because he failed to attend a training. *See* [ECF No. 37 at 9–10.] He argues that the severity of the punishment does not fit the crime and thus cannot pass the Seventh Circuit's "straight-face test."[1] [*See* ECF No. 37 at 9–10.] However, neither the Report nor Defendant allege that this missed training was the sole reason for

---

[1] Plaintiff cites to *Stalter v. Walmart Stores Inc.*, 194 F.3d 285, 290–291 (7th Cir. 1999), where the court found that the severity of terminating the plaintiff for eating a handful of chips from an open bag in the lunchroom was akin to "swatting a fly with a hammer" and "does not pass the straight-face test."

7

his termination. Treme testified that he terminated Plaintiff based upon the Chief's Recommendation and several write-ups "*includ[ing]* the last one where he failed to appear for a mandatory training session." Treme Dep. 14:16–20 (emphasis added); ECF No. 22-1 at 4 (citing Treme Dep. 42–44.) Plaintiff's objection is thus overruled.

Additionally, Plaintiff argues that the Report ignored the evidence that he missed the training due to his employer's "unattainable" expectations regarding email and phone usage, which indicates pretext. [ECF No. 37 at 10.] Specifically, Plaintiff points to the Defendant's expectation that its officers monitor their work email and answer calls from the department on their personal devices while they are off duty. *Id.* at 10–11. He alleges that he did not know about the training scheduled for March 6, 2019, because he does not check his work email while off-duty and the email informing the officers of the mandatory training was sent on March 4, 2019 (a day he was off). *See id.* at 10–11; [ECF No. 36 at 7]; *see also* Pl. Dep. Tr. at 42, 44. He was also off on March 5, 2019, did not check his email, and thus was unaware that he was expected to show up for training until the morning of March 6 when Officer Christopher Arroyo ("Arroyo") called him. *See* [ECF No. 37 at 10–11.] In support of his argument, Plaintiff points to Eighth Circuit cases where the employers imposed unattainable production goals on their employees, which provided evidence of pretext because a jury could reasonably view the goals as an effort to set up an employee for failure. *See* [ECF No. 27 at 10]; *Willnerd v. First Nat. Nebraska, Inc.*, 558 F.3d 770, 779 (8th Cir. 2009); *Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 499 (8th Cir. 1998)). The court is unpersuaded that a jury could find that imposing an expectation that officers check their email or answer their phone while off duty is an "unattainable goal" intended to set Plaintiff up for failure. *See* [ECF No. 27 at 10.] Plaintiff's objection is thus overruled.

Finally, Plaintiff reasserts his argument that Defendant's failure to properly investigate the

claims against him before terminating him is evidence of pretext. *See* [ECF No. 37 at 11–12.] Plaintiff suggests that Treme should have conducted an investigation into the allegations contained in the written reprimands before terminating him. *Id.* But again, this argument fails. The record reflects that Treme talked to the police chief about the incidents and relied on his word. *See* Treme Dep. 13–14, 45. Even if this was a substandard or improper investigation, it "does little to help [Plaintiff] establish that the reasons given for his termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that [his] race or gender was the real reason for [his] termination." *Bonds v. Leavitt*, 629 F.3d at 386. Plaintiff's objection is thus overruled.

### B. Retaliation

The court turns to Plaintiff's general allegation that the Report ignored arguments supporting his retaliatory termination claim. [ECF No. 37 at 6.] Plaintiff's claim of retaliation surrounds a grievance he submitted containing complaints of improper investigation and unfair treatment by Chief Williams. *See* [ECF No. 36 at 19.] The Report opined that even if Plaintiff's grievance against Williams "could be considered a protected activity, Plaintiff fails to present evidence sufficient to show a causal connection between the grievance and his termination." [ECF No. 36 at 20.] Specifically, the Report found that the grievance—submitted over six months prior to his termination—was not sufficiently close in time to establish temporal proximity, and Plaintiff failed to point to any other evidence showing a causal connection between the two events. *Id.* at 21.

Plaintiff has not pointed to a specific error in this portion of the Report, and thus the court reviews this portion of the Report for clear error only. Finding no clear error, the court adopts the Report's recommendation to grant summary judgment in favor of Defendant on Plaintiff's retaliation claim.

### III. FLSA

Plaintiff's FLSA claim asserts that Defendant failed to compensate him for the off-duty work of checking emails or answering his phone. *See* [ECF No. 1-1 ¶¶ 55–59.] The Report opined that Plaintiff failed to demonstrate that the time spent doing so was more than *de minimis* and thus was not compensable. [ECF No. 36 at 22.] Plaintiff argues that the Report failed to consider two key Fourth Circuit cases, *Kelly v. Hines–Rinaldi Funeral Home, Inc.*, 847 F.2d 147, 148 (4th Cir. 1988) and *Perez v. Mountaire Farms, Inc.*, 650 F. 3d 350, 373 (4th Cir. 2011). *See* [ECF No. 37 at 13–17.] However, neither of these cases support Plaintiff's compensability argument.

In *Kelly*, the Fourth Circuit held that the time between midnight and 6:30 a.m., during which a funeral home employee was expected to remain in his residence on the premises, answer the phone, and go pick up a corpse if required, was not compensable because the majority of the hours were available for the plaintiff's uninterrupted use in his own apartment on-site. *See Kelly*, 847 F.2d at 148–149; *Balbed v. Eden Park Guest House, LLC*, 881 F.3d 285, 293 (4th Cir. 2018) (summarizing Kelly). Plaintiff argues that the Report failed to acknowledge *Kelly*, or its factors that "the Fourth Circuit laid out for determining the level of interference with an employee's private life." [ECF No. 37 at 32.] However, the factors he mentions—"(1) whether the employee may carry a beeper or leave home; (2) the frequency of calls and the nature of the employer's demands; (3) the employee's ability to maintain a flexible 'on-call' schedule and switch 'on-call' shifts; and (4) whether the employee actually engaged in personal activities during on-call time"—are not cited in *Kelly* as Plaintiff contends, but are cited in *Whitten v. City of Easley*, 62 F. App'x 477, 479 (4th Cir. 2003). As an unpublished decision, *Whitten* provides no precedential authority in this circuit. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006).

Regardless, neither *Whitten* nor *Kelly* supports Plaintiff's compensability argument because he fails to demonstrate that his personal activities were sufficiently restricted by Defendant as to

10

require compensation under the FLSA. Although Plaintiff argues he was always "on-call" while off-duty, the record reflects that Plaintiff was not required to "sit [at] home waiting for the phone to ring," was only called to come in a couple of times over the course of his employment (and never in an emergency fashion), and other than his employer's expectation that he check his email daily and respond to calls within an hour, he was free to go about his personal activities. *See* Pl. Dep. 53–55; *Whitten*, 62 Fed. Appx. at 479 ("'[T]he test is not whether the employee has substantially the same flexibility or freedom he would if not on call,' but rather 'whether they may actually engage in personal activities during 'on call' shifts.'"(citations omitted)); *Kelly*, 847 F.2d at 146 (finding time spent "waiting to be engaged" non-compensable where employee could wait at home and interruptions from his employer were infrequent.); *see also Jaggers v. Odyssey Healthcare, Inc.*, No. 2:05-cv-03385, 2006 WL 8447922, at *7 (D.S.C. Nov. 14, 2006) (finding social worker's on-call time was "not sufficiently restrictive of her personal activities so as to require defendant to compensate her under the FSLA" where she had to carry a beeper and respond to calls within an hour but "short of taking alcohol or mind-altering drugs, [she] was free to go about a virtually unlimited range of activities"), *aff'd*, 276 F. App'x 310 (4th Cir. 2008).

Plaintiff fares no better under *Perez*. Plaintiff argues that the decision favors a finding that his off-duty work was not *de minimis*. In *Perez*, the Fourth Circuit considered whether the time employees spent at work, donning and doffing protective gear before and after their work shifts was *de minimis* and thus not compensable. *Perez*, 650 F.3d at 372–73. In its analysis, the court applied a three-factor test, evaluating: (1) the employer's practical difficulty in recording the additional time; (2) the total amount of compensable time; and (3) the regularity of the additional work. *Id.* The *Perez* court concluded the time was not *de minimis* because: (1) experts were able to measure the amount of time required to don and doff the gear (10.204 minutes per day) and thus

11

the time expended was "not so miniscule that it would be difficult to measure as a practical matter"; (2) the aggregate amount of compensable time was significant; and (3) the activity occurred regularly each workday. *Id.* at 374.

Plaintiff asserts that here there is no practical difficulty in having to record the additional time spent answering calls or emails, "the work at issue is very regular, and the total amount of compensable time would be significant." [ECF no. 37 at 15–16.] In support, Plaintiff points to Officer Arroyo's testimony that Chief Williams called Arroyo "a couple times a week" while he was off-duty, and he was expected to return his call within the hour. *See id.* at 16; Arroyo Dep. 43:11–44:20. However, when compared to Plaintiff's testimony that Williams called Plaintiff only a couple of times over the course of the *year* that Williams was Chief, it is evident that the time officers spent answering off-duty calls lacks the regularity seen in *Perez*, where the activity occurred before and after each shift. *See* Pl. Dep. at 53–54. Further, Plaintiff has failed to forecast evidence supporting his assertion that the time required by the off-duty activities in this case "likely far exceeds" the ten-minutes per day found compensable in *Perez*. *See* [ECF No. 37 at 16.] As a result, the court finds no error in the Report's conclusion that Plaintiff failed to show that time checking emails or taking work-related calls off-duty was more than *de minimis*. See [ECF No. 36 at 21–22.]

In sum, neither *Perez* nor *Kelly* supports Plaintiff's argument that Defendant violated the FLSA by not compensating Plaintiff for off-duty time spent checking his email or answering the phone if the department called him. Plaintiff's objection is thus overruled, and the court adopts the Report's recommendation to grant summary judgment on his FLSA claim.

## CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the court

adopts the Report, ECF No. 36, in its entirety and incorporates the Report by reference herein. As a result, the Defendant's motion for summary judgment, ECF No. 22, is **GRANTED** as to Plaintiff's Title VII, ADEA, and FLSA causes of action. The court declines to exercise jurisdiction over Plaintiff's state law causes of action and remands the remaining claims to the Court of Common Pleas, Williamsburg County.

**IT IS SO ORDERED.**

March 15, 2022
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge